CITY OF MEMPHIS v. ENOCH ENSLEY et als., Stock-
holders in Memphis Gas Light Company.

1. CAPITAL STOCK AND SHARES OF STOCKHOLDERS. *Distinction between.*
Capital stock is the whole individual fund paid in by stockholders,
the legal right to which is vested in the corporation, to be used and
managed in trust for benefit of members. Shares of stockholders are
the individual interests of a party in dividends, as they are declared,
and the remote right to a *pro rata* distribution of the effects of the
corporation on hand at the expiration of the charter.

2. TAXATION. Shareholders in a moneyed corporation are liable to be
taxed on the market value of their stock, regardless of the fact that
the capital stock invested in the property of the corporation has also
been taxed and the same has been paid.

3. TAX ON INCOME. A tax on income derived from property can be sus-
tained, notwithstanding the property from which that income is de-
rived has also paid a tax, whether the same in amount or not.

Cases cited: Union Bank of Tennessee v. The State, 9 Yerg., 490, re-
viewed and re-affirmed.

FROM SHELBY.

Appeal from the Circuit Court. C. W. HEISKELL,
Judge.

MORGAN and RANDOLPH for plaintiff.

SMITH, GANTT, WADDELL & McDOWELL and
BROWN for defendant.

FREEMAN, J., delivered the opinion of the court.

The case of the City of Memphis v. Enoch Ensley
et als., Stockholders in Memphis Gas Light Company,

presents a different question in its facts from any we have heretofore discussed in the previous questions on the subject.

In this case the Gas Light Company have all their capital stock invested in Gas Works Manufactory and other appurtenances necessary to the production and supply of gas. This property has been regularly assessed for taxes, and the same was paid. A tax, however, has been assessed on the shares of stock owned by the stockholders at their market value as part of the personal property of said stockholders, the stock being valued at fifty cents on the dollar as the market value. It is now claimed that there is double taxation, on the ground that the tax on the capital stock as invested is a tax on the shares, and that this last tax cannot be collected by law. There is no contract in the case for exemption, but it stands on the naked question whether a tax on the capital stock is a tax on the stockholders, and we suppose it must also be assumed, to make out the case fully of defendant, is the same tax on the shareholders or shares of stock as the one imposed on the stockholders or shares of stock, and, therefore, is double taxation, or a tax levied twice on the same property. However, it may be that the last assumption may not necessarily be involved in the first.

We may say in advance that here we are not trammelled by the controlling influence of the Supreme Court of the United States, as a revisory court, should there be any conflict between the views of that court and our own, and may fully settle the question on

the weight of authority and legal reason, as applied to the facts of the case.

It is said this is a pure question of authority, but this is not true, as it is largely a question of fact, at least in one important aspect of it; that is, whether, in fact, a tax on the capital stock is a tax on the shares of the stock in such a sense as to be double taxation to tax both. We have no contract in this case to be construed by the actual or assumed intention of the Legislature; on the proposition, as a matter of fact, we will give what hereafter appears to us to be the effect of such a tax on the capital stock, or a tax on the shares of stock. At present we look for the law of the case, so far as settled in our own State, and hastily refer to the views of some of our sister States.

We have the case of the *Union Bank* v. *The State,* 9 Yerg., 490, in our own State, and if the case settles a definite rule on the subject, unless we can see high and controlling reasons to the contrary, we shall feel bound to follow it.

In this case, by the act of 1836, a tax had been assessed on the capital stock, amounting to about $190,000, at so much of each hundred dollars. It was agreed that the tax assessed was on the capital stock of the bank held by individuals, and that the bank was required to pay it. It appears from the statement of the case by the reporter, as well as from the opinion, that the stockholders presented their rights in the case.

Judge Turley, in commencing the opinion, says:

"The question involve the taxing power of the State, the privileges of an incorporated constitution, and the rights of non-resident owners of our bank stock, and as appears also in the latter part of the opinion, the liability of resident stockholders. This is correct, for the act fixing the tax levied it on shares of stocks, but required it to be collected from the bank on the amount of stock paid, and made it the duty of the cashier to list the amount of the stock owned in his bank by the several stockholders." Under the agreed case, that if "the bank was in any way reliable, the court should render such judgments as the law warranted, the question of the liability of the shares of the stock was fairly before the court. The court clearly held in this case that the exemption in the charter of the bank, that in consideration of the privileges granted by the charter of the bank agrees to pay annually the one half of one per cent. on the amount of the capital stock paid in by the stockholders other than the State." And it clearly held that the franchise and the capital stock as necessary to the enjoyment of the franchise could not be taxed, and to do so would impair the obligation of the contract. It also held that the shares of the stock owned by the State as individual property of the person owning it might be taxed, notwithstanding the exemption by contract of the capital stock, but that this must be done *ad valorem*, or upon its market value, under the Constitution of 1834.

In this opinion Judge Turley states the view of the court on the question of the distinction between

the capital stock and the shares of stock owned by individuals, saying it is a mistake to suppose that the stock of an individual consists of so much money owned by him in the bank.   The money in the bank is the property of the institution to the ownership of which the stockholder has no more claim than a person has who is not at all connected with the bank. He then adds that the stockholder is the owner of his stock, and may transfer it at his pleasure, and that a tax on the shares is in the nature of a tax on income, he having previously defined bank stock to mean "the individual interest of a party in the dividends as they are declared, and a right to a *pro rata* distribution of the effects of the bank on hand at the expiration of the charter." If then, the exemption of the capital stock did not exempt the shares of stock, it is clear that upon the reasoning of the court it must have been on the ground that they were not the same properties, and the one did not include the other.

Such was the holding of the court, as we understand it, beyond all question.   We are pressed to reserve or disregard this view in arguments of exceeding ingenuity as well as rare ability and learning.

We have cheerfully examined the cases presented from the courts of our sister States, and their reasoning, and concede that in all of them urged upon our attention by counsel for their corporations, in which the direct question is presented, the doctrine is announced for which they contend with more or less distinctness, and in several of them with great force

of reasoning.    But we do not see that the reasoning
is so clear and demonstrative as that we should over-
rule a well considered opinion of our own court in a
case which was argued by the first talent this State
has produced, and decided by a court the equal of
any sister State that has held to a different view.    The
cases referred to, or some of them, are *Johnson* v.
*Commonwealth,* 7 Denio, 363; *New Haven* v. *City Bank,*
31 Conn.; *State ex rel Colt* v. *Power,* 4 Zabriski, 40;
*State* v. *Brannum,* 3 Zabriski, 493; 3 Hannon, 72, to-
gether with a number of others that need not here be
noted.    The question of whether the tax on the
capital stock is a tax on the shareholders or shares,
and *e converso,* whether a tax on the shares is a tax
on the capital stock, and the identity of the two things
or properties is one of that character of questions on
which so many elements of identity and also of di-
versity are presented as renders it exceedingly difficult
to say on which side is the preponderance.    It is
certainly true that the stockholder who pays his own
hundred dollars to the corporation, and receives there-
for a certificate of stock, has not thereby made him-
self the owner of one hundred dollars of money in
the corporation, and also of one hundred dollars of
property in stock, nor has the aggregate amount of
money been increased by the operation.    This is con-
ceded.    But then the certificate of stock does not, in
fact, import that he owns the one hundred dollars in
the bank.    What then is the element of property or
value in the share of stock?    It is a chose in action,
an intangible thing evidenced by writing, and certainly

has a market value as such, subject to rise and fall under the influence of certain laws of trade, or rules that govern the market for the commodity more or less distinctly defined. Of these elements the leading one is the amount of dividend to be derived from the investment, and that arises from the prudent and skillful management of the institution and its business, together with inherent advantages for profitable use of the business itself, without going into the various circumstances that may render the dividends large or small, it is certain that ordinarily their amount makes up the larger share of the value of the stock; the element of ultimate safety of the fund invested, and reimbursement at the termination of the corporation life having comparatively little influence in fixing the market value of the stock in the larger number of cases. This being so, the dividends thus to be received by the holder, it seems to us, are the largest element of value which enter into this kind of property, and is that on which a tax on the share is laid, and on which the burden falls directly, and when the stock is taxed at its market value, it bears a burden in proportion as the owner receives an income from it, and in this view it is a tax on income derived from stock to a greater extent than any other element of property in the thing taxed, but not on the money paid for the stock. This tax is not paid out of the capital stock, nor does it reduce its amount in the slightest. That remains in the bank when the stock is bank stock, and yields the precise amount of profit, and the same dividends are declared

on it as if no tax were paid by the stockholders. It is true, the amount of this income or dividend in in the hands of the stockholder is reduced to him on its value or amount, by the amount he is compelled to pay on it to the government as a tax; but this is what occurs in the value of all property subject to taxation. He owns the whole property in the dividend declared, but by reason of the ownership he owes the government a certain amount on a tax for his protection, which he must pay in common with every other citizen, but he pays it only on its real value, that is, mainly on the amount of income to be derived from it, or dividend to which he is entitled by reason of his ownership of the property.

We think all this very clear, and, therefore, that the simple question in this aspect of the case is, whether a tax on income derived from property can be sustained where the property from which that income is derived has also paid a tax, whether the same in amount or not.

In this case the capital stock has not paid the same amount of tax because it has paid ad valorem on the property at full value, and the stock is assessed at its market value, which is only fifty cents on the dollar, assuming that the property is worth more than fifty cents on the dollar of its cost. The idea suggested by the proposition thus announced suggests the consideration of the other aspect of the case—is the tax on the capital stock a tax on the shares. It must be admitted that this tax would lessen the amount of dividend on the shares to the extent it was paid, and

the value of the share would, in a certain proportion, be diminished; but then the share is not taxed at its face value, as representing or standing in the place of the capital stock paid in for it, but only at its market value, thus reduced by the fact that the income which it yields has been rendered less by the tax imposed on the property from which it is derived. If the stock is worth par, then, indeed, it would pay, if the rate of the tax was the same fixed on the capital stock per share as that on the shares, the same sum in the way of taxes; if, however, the shares, as in some cases, were worth double the amount of dollars called for on its face, then it would pay this much more in proportion to its value; but this value would be made up of income, and the increased amount paid would be on the increased income paid by the owner. But if, again, the stock, say, was worth in the market only ten cents on the dollar, then the tax on the share would not be the same as that paid on the capital stock, if taxed on the amount paid in.

Without further pursuing this line of argument, it suffices to say that the illustrations we have given show that there are elements of diversity between the capital stock and the shares to sustain the view of Judge Turley, that the same are two distinct properties, and though one be exempt by contract, yet the other is liable to be taxed; at any rate, there is nothing in the opposite view, we think, so preponderating as ought to induce us to overrule the opinion referred to. We might cite several cases referred to that seem to accord with this view, but it would extend this opinion,

36—VOL. 6.

already much longer than is desirable. It suffices to say, that the well known cases of the National Banks, their capital stock being in United States bonds, and exempt from taxation, yet the shares owned by the stockholders being held liable to State taxation, all go on this view of the question, and distinctly announce this theory, whether the cases rests entirely on it or not. As to any supposed danger of the destruction of the value of property or stocks by taxation, we need only say, that it is a property distributed among the people like other property, is not usually aggregated in large masses, or at any rate at present, has not reached that point in our State, and for its protection may be safely left to the sense of justice of the Legislature and influence of the constituent on the representative. In addition, under our Constitution it can only be taxed as other property, according to its value. If it should grow into such large masses ultimately in the hands of the capitalists in the future growth and development of the wealth and resources of the country as to excite prejudices, no danger need be apprehended, as all history shows that capital has always been able to take care of and protect itself.

We, therefore, conclude, that the shareholders are liable to be taxed for their stock as owners of other property, regardless of the fact that the capital stock invested in the property of the company has been taxed, and has paid the same.

Judgment will be entered in the cases in pursuance of the views of this opinion, with costs.