COOK ET AL., EXR'S, V. CITY OF BURLINGTON ET AL.

1. **Constitutional Law:** TAXING POWER. The legislature has the power under the Constitution to impose a tax upon the property of a toll-bridge company as the property of the corporation, and also to impose a tax on the shares of the corporation stock as the property of the stockholders.

ADAMS, J., *concurs* in the conclusion of the majority, but on the ground that, in this case, only a part of the corporation property was shown to have been assessed to the corporation, and that, therefore, the court below very properly held that upon the showing made the stock was not *wholly* exempt, no mere reduction of assessment having been asked.

*Appeal from Des Moines Circuit Court.*

FRIDAY, JULY 14.

THE plaintiffs are the executors of the estate of James W. Grimes, deceased. They are residents of the city of Burlington, where the estate is situated. Part of the estate consists of shares of stock in the Dunleith and Dubuque Bridge Co., which is a corporation of that name, incorporated under the general incorporation laws of the State of Iowa, and having its principal place of business in Dubuque county. The corporation owns a bridge across the Mississipi River, from the city of Dubuque, Iowa, to the eastern shore of the river in the State of Illinois, and said bridge is all the tangible property owned by the corporation. The bridge was assessed for taxation at Dubuque, and the taxes were paid. The shares of stock in the bridge company held and owned by the estate of Grimes, were also assessed for taxation for the same year at the city of Burlington. The plaintiffs claimed that the stock was not liable to taxation, and appealed from the board of equalization of the city of Burlington to the Circuit Court. Upon a trial in the Circuit Court it was held that the assessment of the stock was authorized by law, and plaintiffs appeal.

*Hedge* and *Blythe, Shiras, Van Duzee* and *Henderson*, for appellants.

*C. L. Poor*, for appellee.

ROTHROCK, J.—The assessment of the bridge as the property of the corporation was authorized by law. *Appeal of The Des Moines Water Company*, 48 Iowa, 324. Whether the shares of stock can be legally assessed and taxed as the property of the stockholders for the same year for which the property of the corporation is assessed and taxed was not determined in that case. It was said, however, that "the statute provides that the stock of such corporations shall be assessed at its cash value. When assessed and taxed under the statute, stock must be taxed as the property of the respective owners, and there is no provision making the corporation liable therefor."

We have then the question in this case whether the shares of stock may be taxed in addition to the taxation of the property of the corporation.

And we may say, once for all, at the outset, that our views, as expressed in the case just cited, that the statute provides that the stock shall be assessed and taxed, remains unchanged. This conclusion is not founded upon any doubtful construction of the statute, but upon its plain, certain and unequivocal language and meaning. The statute imposing this burden upon the stock is found in section 813 of the Code, and is as follows: "Depreciated bank notes and the stock of corporations and companies shall be assessed at their cash value, * * * * * "

It is idle to contend in the face of this plain and explicit language that the legislature has not required that stock in corporations shall be assessed, and the only question now for determination is, does the legislature have the power to determine that the property of a corporatian and the stock shall both be taxed.

Counsel for appellants contend that no such power exists,

because it is duplicate or double taxation of the same prop-
erty, and it is insisted that "this court has over and over
again declared that double taxation is forbidden by our Con-
stitution." If this statement were correct, and we should
concede that the question here presented were one of dupli-
cate taxation, the case could easily and speedily be disposed
of by a prompt reversal. But, while it is true that this court
in *Tallman v. Butler County*, 12 Iowa, 534, said that it
"is neither the policy nor the justice of the law to tolerate
double taxation," and in *U. S. Express Co. v. Ellyson*, 28
Id., 378, that "double taxation would be so unjust as to ex-
cite disfavor of both courts and legislature," and in *McGreg-
or's Executors v. Vanpel*, 24 Id., 436, that mortgages upon
real estate should be held to be taxable "unless this will lead
to double taxation," yet it never has been held in this State,
that what is denominated duplicate taxation is in excess of
the legislative power. The most that can be said of these ut-
terances of this court is, that it should be held in disfavor by
courts and legislatures.

In Cooley on Taxation, 165, it is said: "It has properly
and justly been held that a construction of the laws was not
to be adopted that would subject the same property to be
twice charged for the same tax, unless it was required by the
express words of the statute or by necessary implication."

Upon the question as to whether the imposition of taxes
upon the property of a corporation and upon the shares of
stock in the hands of stockholders, the general observations
upon the subject of duplicate taxation found in Cooley on
Taxation, page 159, seem to us to be appropriate to be here
quoted. It is there said: "A system of indirect taxes, com-
bined with a system of general taxation by value, must often
have the effect to duplicate the burden upon some species of
property or upon some persons, and the taxation of stockhold-
ers of a corporation and also of the corporation itself, must
sometimes produce a like result. There is also, sometimes,
what seems to be double taxation of the same property to

two individuals, as where the purchaser of property on credit is taxed on its full value while the seller is taxed to the same amount on the debt.    *    *    *    *.   Now, whether there is injustice in the taxation, in every instance in which it can be shown that one individual, who has been directly taxed his due proportion, is also compelled indirectly to contribute, is a question we have no occasion to discuss.   It is sufficient for our purposes to show that the decisions are nearly, if not quite, unanimous in holding that taxation is not invalid because of any such unequal results."

It must be conceded that the taxation of the property of the corporation and also of the stock bears no resemblance to taxing the same tract of land twice to the same person; nor once to A., and again to B.   That would be a double taxation, which we suppose would not be allowable in any State in the Union.   It would be a direct discrimination and inequality in the exercise of the taxing power, which would impose a greater burden upon one citizen than upon another upon the same kind of property.   But the case at bar is quite different. The corporation is a person distinct from the stockholder.   It is true, it is what is denominated an artificial person, and may be said to be ideal and intangible.   But that it is a person in law is the first principle learned by the student in opening any book on corporations.   Its stockholders are distinct and different persons.   They are usually not liable for its debts, and have no right to the enjoyment or possession of its property during the period of its duration or until it be dissolved by some procedure known to the law.   The stockholder is entitled to dividends upon his stock, if there be any dividends, and the value of his stock depends upon prospective dividends, and the dividends depend upon the net earnings of the corporation.   If the bridge in this case be taxed, the tax must be paid from the income, and this reduces the value of the stock, so that there is no duplicate taxation, so far at least as the tax upon the bridge reduces the value of the stock.

In *McGregor's Exec'rs v. Vanpel, supra,* this court held that a mortgage given to secure the payment of the purchase-money of the premises mortgaged is not exempt from taxation. In that case it is said that "a system of assessments operating with entire equality and with absolute justice is a desideratum in government yet unattained, and perhaps unattainable." And in *Finley v. Philadelphia,* 32 Pa. St., 381, it is said: "There is nothing poetical about tax laws, whenever they find property they claim contribution for its protection without any special respect to the owner or his occupation."

The best devised system of taxation based upon the values of property must, of necessity, produce unequal results, so long as the attempt is made to tax all property including real estate, personal chattels, and moneys and credits. One person will be taxed upon the real estate bought upon credit, and another upon the obligation which he holds for the purchase-money. And this must necessarily be so or there would be but little taxation upon credits, because, for the most part, they are either the representative of money or property of some kind held by another. If as is said in Cooley on Taxation, p. 100, "all the property in a town is sold on credit and the property is taxed to the purchasers, and the debts to sellers, it is manifest that the town taxes twice as much wealth as lies within its borders." And yet under the system of taxation adopted by the State of Iowa, it cannot be claimed that the assessor must inquire of the owner of promissory notes, or mortgages, whether they are credits for taxable property which has been sold by the holder of these credits.

In the case at bar the stockholders paid to the corporation a certain sum of money. The corporation used this money in the construction of a toll-bridge from which the corporation derived an income. The agreement between the contracting parties is that the corporation is to manage and control the bridge, make the necessary repairs, and pay the taxes assessed against the bridge, and after deducting these legiti-

mate and necessary expenses pay to the stockholder his proportionate share of the net earnings, and upon the dissolution of the corporation the stockholder is to be repaid his money advanced from the property belonging to the dead corporation. Now, suppose this very contract were made with a natural person instead of a corporation, and the stockholder or creditor should make a claim that the obligation held by him was not taxable. There would be no more grounds for such claim under our system of taxation than there would be for the claim that if A loans B $100, which is invested in merchandise, the debt is not taxable because the merchandise is taxable. .

These illustrations, it appears to us, demonstrate . that if we were to determine that the legislature has no constitutional power to impose this tax upon the stockholder, it would open a door into a sea of trouble in the administration of the revenue laws of the State.

In disposing of this important question we have not reviewed the authorities cited by the respective counsel of the parties. It is sufficient to say that these views are supported by the very great majority of adjudged cases upon this subject. We think the Circuit Court correctly determined that the shares of stock are taxable. And if the public interests of this State require that either the property of a corporation of this character, or the stock therein be exempt from taxation, that relief must come from the law-making power. It will be understood that the decision in this case will have no application to capital stock in manufacturing companies. By chapter 57 of the laws of 1880 such stock is exempt from assessment and taxation.

AFFIRMED.　.

ADAMS, J.—I concur in the result reached in this case, but not in the ground upon which it is reached. The general question decided by the majority, while it is the only question argued by counsel, does not, it appears to me, properly

arise from the record, and could not properly have been decided by the court below.

The appellants, in maintaining that the stock is not liable to taxation, contend that it is not for the reason that the property of the corporation had been taxed to the corporation in Iowa, and that the taxation of the stock under the same sovereignty would be double taxation, and not allowable. The majority hold that such taxation would not be double taxation in such sense that it is not allowable. Upon this question I do not feel called upon to express any opinion. A part of the bridge is in the State of Illinois and not taxable in Iowa. *Dunleith & Dubuque Bridge Co. v. Dubuque County*, 55 Iowa, 564. It is true, one witness testified that "the taxes on the bridge had been assessed at Dubuque and paid in Dubuque county." But I cannot presume that the witness meant that any more of the bridge was taxed at Dubuque than was taxable there. Besides, if taxes had been collected in Dubuque county upon Illinois property, it would be by reason of a mistake, which would be subject to rectification.

We have then a case where a portion only of the property of a corporation is shown to have been taxed to the corporation. This is not sufficient to justify us in holding that the stock is wholly exempt as appellants contend. The court below very properly held that the stock upon the showing made was not wholly exempt. No mere reduction of assessment was asked, and no allusion appears to have been made to such a question. The ruling, then, could not properly have been different if it should be conceded that where all the property of an Iowa corporation is in Iowa and has been taxed in Iowa, the stock of such corporation would be exempt.