[No. 7741.]

CITY AND COUNTY OF DENVER v. HOBBS ESTATE ET AL.

1. TAXATION—*Taxable Property—Stock in Foreign Corporation.*
Under Rev. Stat. Sec. 5687, shares in the capital stock of corporations, either domestic or foreign, except banking corporations, are not taxable. (222)

The proviso to this section is not in conflict with sec. 6 of art. X of the constitution. (229)

2. STATUTES—*Construction.* The Revenue Act is to be considered as a whole. (222)

*Error to Denver County Court.*—Hon. JOHN R. DIXON, Judge.

Mr. BENJAMIN GRIFFITH, Attorney General, Mr. THEODORE M. STUART, JR., Assistant Attorney General, Mr. H. A. LINDSLEY, Mr. THOMAS R. WOODROW, Mr. I. N. STEVENS, Mr. GEORGE Q. RICHMOND, Mr. CHARLES A. PRENTICE, for plaintiff in error.

Mr. EDWARD C. STIMSON, Mr. HENRY C. ROGERS, *amici curiae.*

Messrs. GOUDY & TWITCHELL, Mr. J. H. BURKHARDT, for defendant in error.

Messrs. MACBETH & MAY, Mr. JULIUS C. GUNTER, Mr. MALCOLM LINDSEY, Messrs. HUGHES and DORSEY, Mr. JOHN Q. DIER, Mr. JOHN A. EWING, Mr. FRAZER ARNOLD, *amici curiae.*

Mr. JUSTICE HILL delivered the opinion of the court:
This is an action for taxes. The property is stocks in corporations of sister states, other than banking insti-

tutions, which, at the time of his death, was owned by Charles M. Hobbs, a resident of this state. It was inventoried here as a part of his estate. It is claimed on the part of the taxing officers that these stocks are subject to taxation, separate and apart from the assets of the corporation. This position is challenged on the part of the estate. No question of inheritance tax is involved. The court held that pursuant to the provisions of section 5687, Revised Statutes 1908, the stocks were not thus taxable. In addition to the oral argument, elaborate briefs have been filed covering the entire field of taxation, including numerous papers of recognized students of ability upon the subject, numerous authorities, etc., a great deal of which, while instructive, is of but slight value in the disposition of this contention, for the reason the question is not what the legislature might do, or should have done in this respect, but what it has done by the enactment of section 5687, *supra*.

It is urged that the latter part of this section, which reads:

"*Provided, however,* That corporate stock shall be deemed to represent the corporate property, and except in case of banking corporations, shall not be taxed. The taxpayer need not return such stock in his schedule."
applies only to domestic corporations by reason of the constitutional provision which requires equal taxation of property, and forbids exemptions other than as therein specified. We cannot agree that the legislature thus intended; when tested by the language used it would be violative of elementary rules of construction. It would be to hold that they meant to say that which they did not say, and that they did not intend to say that which, in the clearest and plainest language possible, they have said. In such case it is not for the courts to give to the language any different meaning from that plainly ex-

pressed:—*Hause v. Rose,* 6 Colo. 24; *People ex rel. v. May,* 9 Colo. 80, 10 Pac. 641; *Uzzell v. Anderson,* 38 Colo. 32, 89 Pac. 785, 1056; *Lake County v. Rollins,* 130 U. S. 662, 9 Sup. Ct. 651, 32 L. Ed. 1060; *City of Denver v. Domedian,* 15 Colo. App. 36, 60 Pac. 1107; *Hazleton v. Porter,* 17 Colo. App. 1, 67 Pac. 170.

We agree with counsel that the Revenue Act of which Section 5687, *supra,* is a part, should be considered as a whole. When thus done, it furnishes other evidence that the legislature intended this proviso to mean what it says, and that it was not intended thereby, or otherwise, that the capital stock of corporations either domestic or foreign, except banking institutions, should be taxed other than as the tax imposed upon the property of the corporation makes it a tax upon the stock. Sections 5575-5581, R. S. make specific provisions for the listing of lands, merchandise, manufactures, notes, bonds and book accounts, besides shares of stock in banking corporations, both state and national, but do not make any provisions for the listing of other corporate stock. Section 5584 provides for the deduction of debts from notes and credits in fixing the value upon the latter, but expressly provides that no such shall be allowed on account of any indebtedness payable upon, or for the capital stock of any corporation, or for the purchase of bonds, treasury notes or other securities of the United States not taxable, or other exempt property. The purpose of this is apparent; as corporate stock was not to be taxed separate and apart from the corporate property, it would be unfair to permit a deduction of debts for things which are not taxable by themselves, but this is not to say that the value of corporate stock is not competent to be considered by the assessor, for the purpose of ascertaining the value of the property of the corporation; to the contrary, Section 5591 makes the stock and bonds competent

evidence of the value of the entire plant of a corporation, either foreign or domestic, while Section 5592 provides that:

"The entire business, plant or enterprise, of such corporation shall be valued as a unit, and every element, subject or consideration wherein the use is in inseparable combination with a whole, of which it forms a part, and which gives to the corporation property an added value for the purposes of income or sale, shall be considered in fixing the value for taxable purposes."

These sections are a guide to the assessor in arriving at the value of the property owned by any corporation, foreign or domestic, but contain nothing which indicates that the stock itself is to be taxed, except as covered by the property of the corporation. Section 5659 requires the assessor to make out an abstract of the assessment in his county, stating in detail certain things among which he shall set forth the total assessed valuation of all shares in banking corporations, but nowhere is it required that the abstract shall show the value of other corporate stock either foreign or domestic. This is in harmony with the proviso to Section 5687 and is further evidence that there was to be no distinction between stock in foreign and domestic corporations.

It is urged that shares of stock in a foreign corporation are the personal property of the owner separate and distinct from the capital of the corporation, for which reason they form separate and distinct subjects for taxation, and should be thus taxed at the residence of the owner. Assuming they are personal property, they are inconsequential property, they are merely tokens or evidence of ownership of an interest in corporate property or the corporation, or something of the kind unnecessary to determine. If destroyed the holder loses nothing, he is still the owner of what they purported to rep-

resent. It is of that class of property that its *situs* for the purpose of taxation is a matter of legislative control as is also the method to be provided for its assessment. In *Tappan v. Merchants' National Bank,* 19 Wall. 490, 22 L. Ed. 189, the Supreme Court of the United States held that shares of stock in national banks are personal property, and though they are a species of personal property which in one sense is intangible and incorporeal, the law which created them could separate them from the person of their owner, for the purposes of taxation and give them a *situs* of their own. While this opinion pertains to stock in a national bank and sustains the validity of an Illinois law pertaining thereto, it recognizes that the *situs* of corporate stock for the purposes of taxation is a proper subject of legislation. At page 499, (22 L. Ed. 189) the court says:

"Personal propertly, in the absence of any law to the contrary, follows the person of the owner, and has its *situs* at his domicile. But, for the purposes of taxation, it may be separated from him, and he may be taxed on its account at the place where it is actually located. These are familiar principles, and have been often acted upon in this court and in the courts of Illinois. * * *

Shares of stock in National Banks are personal property. They are made so in express terms by the act of Congress under which such banks are organized. They are a species of personal property which is, in one sense, intangible and incorporeal, but the law which creates them may separate them from the person of their owner for the purposes of taxation, and give them a *situs* of their own. * * * It is conceded that it was within the power of the State to tax the shares of non-resident shareholders at the place where the bank was located, but it is claimed that under the constitution of the State resident shareholders could only be taxed at the places of their residence.

But it is said to be a violation of the constitutional rule of uniformity to compel the owner of a bank share to submit to taxation for this part of his property at a place other than his residence, because other residents are taxed for their personal property where they reside. It is a sufficient answer to this proposition to say that all persons owning the same kind of property are taxed as he is taxed.   *   *   *

We have not felt called upon to consider whether the General Assembly could, under the provisions of the act of Congress, provide for the taxation of shareholders at any other place within the State than that in which the bank is located. It is sufficient for the purposes of this case that it might tax them there.''

In *Wright et al. v. Southwestern Railroad Co.*, 64 Ga. 783, it was held that the *situs* of stock in a railroad company whose road lies outside of the state of Georgia is in the state where the road lies, and that although held by a resident of Georgia, it was not taxable there. Later, in *Georgia Railroad & Banking Co. v. Wright et al.*, 124 Ga. 596, 53 S. E. 251, it was held that by an act of the legislature approved after the former opinion that the former decision ceased to be the law, and for the purposes of taxation that the later act fixed the *situs* of such stock held by residents of that state in Georgia, for which reason it was properly taxable there. The substance of both opinions material to the present controversy is their recognition that the *situs* of such stock for the purposes of taxation is subject to legislative control. The latest declaration of that court upon the subject appears to be in the *Georgia Railroad & Banking Co. v. Wright*, 125 Ga. 589, (54 S. E. 54), where, in commenting upon this subject, at page 595, the court says:

''The value of the shares depends upon the value

of the property of the corporation which issues them. Their *situs* for taxation is within limits subject to legislative declaration. The legislature may have even the right under our constitution to declare that the *situs* for taxation of shares of foreign stock held by a resident of Georgia is not in Georgia, but they clearly have the power to declare that shares of such stock have a *situs* for taxation in this State.''

In commenting upon the answers to be made by taxpayers, the court at page 596, (54 S. E. 55) says:

''If the question calls for the disclosure of property which has an intrinsic value and is located within this State, then of course the property must be taxed, for the constitution imperatively requires that this shall be done. If, however, there is no question which compels the taxpayer to disclose the ownership of that which has no *situs* for taxation within this State, or which has no taxable value, when there is no legislative daclaration to that effect, then the absence of the question indicates a legislative intent not to declare taxable that which has no intrinsic value, but which becomes taxable merely as a result of a law declaring it to have a taxable value.''

In *Smith v. Ramsay,* 54 N. J. L. 546, 24 Atl. 445, it was held that stocks in foreign corporations owned by residents of New Jersey were exempt from taxation under the laws of that state. To the same effect are.— *State v. Bentley,* 23 N. J. L. 532; *State v. Branin,* 23 N. J. L. 484; *State, etc. v. Jones,* 38 N. J. L. 83; *De Baun v. Smith,* 55 N. J. L. 110, 25 Atl. 277; *State, etc. v. Runyon,* 41 N. J. L. 98; *Jersey City Gaslight Co. v. Jersey City,* 46 N. J. L. 194.

These cases are based upon the theory that a tax on the corporate property and on the stock of the corporation are identical, and was thus recognized by the legis-

lature in its acts which exempt from taxation the stock of foreign corporations held by resident taxpayers.

In *People ex rel. E. E. L. Co. v. Campbell,* 138 N. Y. 543, 34 N. E. 370, 20 L. R. A. 453, it was held that stocks in foreign corporations owned by residents of that state was capital employed out side the state and was not subject to taxation. In commenting at page 546, (34 N. E. 371, 20 L. R. A. 453), it is said:

"The stocks which the relator took in companies organized outside of this state stood for so much of the relator's capital, invested outside of the state. It took a portion of its capital to wit., a portion of its patent rights, and employed it outside of the state to purchase those stocks. Its property in those corporations, represented by its shares of stock was outside of this state, and was in no sense employed here. Those stocks had no *situs* here and were not taxable here under any system of taxation which has ever existed in this state."

This appears to have always been the rule in New York State.—*People ex rel. v. Commissioners of Taxes,* 64 N. Y. 541; *People ex rel. v. Wemple,* 133 N. Y. 323, 31 N. E. 238; *People ex rel. v. Wemple,* 129 N. Y. 558, 29 N. E. 812; *People ex rel. v. Commissioners of Taxes,* 11 N. Y. (4 Hun) 595; *Hoyt v. Commissioners of Taxes,* 23 N. Y. 224; *People v. Gardner,* 51 Barb. (N. Y.) 352; *People ex rel. v. Commissioners of Taxes,* 5 Hun (N. Y.) 200. The latest New York case called to our attention is *People ex rel. v. Knight,* 173 N. Y. 255, 65 N. E. 1102.

Stock in two foreign corporations was purchased by a domestic corporation by an issue of bonds, the stock was also pledged to a trust company (a resident of that state) as collateral for the payment of the bonds, held, it was not subject to tax. In commenting at page 260, (65 N. E. 1103) the court said:

"This stock was part of the relator's capital or

general assets. Both companies are foreign corporations, the former being partly within and partly without the state and the latter entirely without the state. * * * The relator being the owner of these stocks, they constituted part of its capital, but that part of its capital was not employed within this state, and so this court has held.—(*People ex rel. Edison El. L. Co. v. Campbell,* 138 N. Y. 543, 34 N. E. 370, 20 L. R. A. 453; *Peple ex rel. Edison El. L. Co. v. Wemple,* 148 N. Y. 690, 43 N. E. 170)."

The case of *State v. Kidd,* 125 Ala. 413, 28 So. 480, affirmed by the Supreme Court of the United States (188 U. S. 730, 23 Sup. Ct. 401, 47 L. Ed. 669), recognizes that the *situs* of corporate stock for the purposes of taxation is a matter that can be fixed by legislation; its holding is that unless fixed by statute its *situs* for the purposes of taxation is at the domicile of the owner. Other cases which sustain our conclusion in this respect are.—*Dundee Mortgage, etc., Co. v. School Dist. No. 1* (C. C.) 19 Fed. 359; *Savings & Loan Society v. Multnomah Co.,* 169 U. S. 421, 18 Sup. Ct. 392, 42 L. Ed. 803; *Mumford v. Sewall,* 11 Or. 67, 4 Pac. 585, 50 Am. Rep. 462; *Pullman's Car Co. v. Pennsylvania,* 141 U. S. 19, 11 Sup. Ct. 876, 35 L. Ed. 613; *Coe v. Errol,* 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715; *Common Council v. Assessors,* 91 Mich. 78, 51 N. W. 787, 16 L. R. A. 59; Thompson's Commentaries on Corporations, vol. 2, § 2846; *Chesebrough v. City and County,* 153 Cal. 559, 96 Pac. 288; *Gillespie v. Gaston & Thomas,* 67 Tex. 599, 4 S. W. 248.

We are not intimating that the state cannot tax stocks of foreign corporations held by its residents and eliminate it from that of domestic corporations except as it is burdened by the taxes upon the property of the corporation; that question is not before us. In some states

such laws have been sustained but the cases thus holding are based upon statutes to that effect, or to the absence of any statute fixing their *situs* when they are made the subject of taxation by either constitutional or statutory provision.—*State v. Kidd,* 125 Ala. 413, 28 South. 480; *Kidd v. Alabama,* 188 U. S. 730, 23 Sup. Ct. 401, 47 L. Ed. 669; *Wright v. Louisville & Nashville R. R. Co.,* 195 U. S. 219, 25 Sup. Ct. 16, 49 L. Ed. 167; *Bradley v. Bauder,* 36 Ohio St. 28, 38 Am. Rep. 547; *Lee, Treas., v. Sturges,* 46 Ohio St. 153, 19 N. E. 560, 2 L. R. A. 556; *Sturges v. Carter, Treas.,* 114 U. S. 511, 5 Sup. Ct. 1014, 29 L. Ed. 240; *San Francisco v. Fry,* 63 Cal. 470; *San Francisco v. Flood,* 64 Cal. 504, 2 Pac. 264; *Seward v. City of Rising Sun,* 79 Ind. 351; *Commonwealth v. Lovell,* 125 Ky. 491, 101 S. W. 970.

We cannot agree that the proviso to section 5687, *supra,* when applied to stocks of foreign corporations is in conflict with the constitution wherein it provides that all laws exempting from taxation property other than that mentioned, shall be void. Stocks in foreign corporations are no more potential than those in domestic corporations, and if this section conflicts with the constitution when applied to stocks in foreign corporations, it must in many cases fall when applied to those in domestic corporations. In addition to the authorities which hold that for the purposes of taxation the *situs* of stock in both foreign and domestic corporations is a matter which can be regulated by legislation, others disclose that such regulations are in no sense an exemption of any property from taxation. It is common knowledge that when our present revenue law was enacted, we had in this state, and probably always will have, many domestic as well as foreign corporations, with all their property within the state, many domestic corporations with practically no property within the state, others of each class with

part of their property within, and part without the state.
The stocks of some of these corporations, both foreign
and domestic, are all held by residents of this state; in
others, all by non-residents; in others, part by residents
and the remainder by non-residents. It follows that if
the failure to tax the stock of a foreign corporation held
by residents would create an exemption within the mean-
ing of the constitution because it has no property within
this state, it would apply as well to the stock of a do-
mestic corporation when its property is without the state.
Other illustrations could be made which disclose the un-
justness of such a position in making it double taxation,
etc., for instance, where the property of a foreign cor-
poration is all within this state; in such case, when the
stock is owned here, taxes would be paid upon both,
while the domestic corporation and its stockholders resi-
dents of this state with practically all its property with-
out the state, would pay no taxes upon either its stock or
property in this state and only upon its property in the
foreign jurisdiction.

Our constitution provides that all taxes shall be uni-
form upon the same class of subjects within the territor-
ial limits of the authority levying the tax, and shall be
levied and collected under general laws which shall pre-
scribe such regulations as shall secure a just valuation
for taxation of all property real and personal. If the
position that Section 5687, *supra*, creates an exemption
when applied to stock in a foreign corporation is correct,
it would equally apply to stock in many domestic corpo-
rations for city and county taxes. Stocks owned by a
resident of one city and county, when the domestic cor-
poration and all its property is situate in another city
and county, is not taxed to the owner at the city and
county of his residence, and pays no taxes there for city
and county purposes. If the corporation and its prop-

erty are situate outside of any city, although the owner
of the stock is a resident of a city, he pays no city tax
thereon at all, and while we concede that the limits of a
city or county are different from state lines, yet to this
extent, if it is an exemption of personal property pro-
hibited by the constitution, the result would be the same
when applied to such local taxes; but we cannot agree
that it is an exemption within the meaning of the con-
stitution. Counsel overlook the latter part of this section
wherein it provides that the legislature shall prescribe
such regulations as shall secure a just valuation for tax-
ation of all property real and personal. This is what the
legislature has attempted by providing that corporate
stock shall be deemed to represent corporate property,
etc. This is a regulation for the purposes of taxation
and is of that class contemplated by the constitution.—
*Stanley v. Little Pittsburg M. Co.,* 6 Colo. 415; *Arapahoe
County v. Printing Co.,* 15 Colo. App. 189, 61 Pac. 494;
*Carlisle v. Pullman Co.,* 8 Colo. 320, 7 Pac. 164, 54 Am.
Rep. 553; *Arapahoe County v. Denver Union Water Co.,*
32 Colo. 382, 76 Pac. 1060; *Taxation of Mining Claims,* 9
Colo. 635, 21 Pac. 476; *People ex rel. v. Henderson,* 12
Colo. 369, 21 Pac. 144; *Amés v. People,* 26 Colo. 83, 56
Pac. 656; *American Refrigerator Co. v. Adams,* 28 Colo.
119, 63 Pac. 410.

A somewhat similar regulation is that which pro-
vides for the deduction of debts from credits in the case
of the individual taxpayer. Such deductions might be
considered as meaning an exemption, but it has generally
been accepted as constitutional, as being a classification
or regulation combining the personal assets and liabilities
of the taxpayer for the purposes of taxation. This pro-
vision has been upon our statute books ever since as
well as before the adoption of the constitution, and has
been recognized as a valid and existing law in the levying

and assessment of taxes.—*Arapahoe County v. Fidelity Savings Assn.*, 31 Colo. 47, 17 Pac. 376; *Chase v. Board of Commissioners*, 37 Colo. 268, 46 Pac. 1011, 11 Am. Cas. 483.

Other courts have held that it does not constitute an exemption within the meaning of a constitutional provision similar to ours.—*Savings & Loan Society v. Multnomah*, 169 U. S. 421, 18 Sup. Ct. 392, 42 L. Ed. 803; *Florer v. Sheridan*, 137 Ind. 28, 36 N. E. 365, 23 L. R. A. 278; *Loan & Homestead Ass'n v. Keith*, 153 Ill. 609, 39 N. E. 1072, 28 L. R. A. 65; *Daly Bank, etc., Co. v. Board of Commissioners*, 33 Mont. 101, 81 Pac. 950.

For the purposes of taxation the constitution compels the combining of certain classes of properties wherein it provides that:

"Ditches, canals and flumes owned and used by individuals or corporations, for irrigating land owned by such individuals or corporations, or the individual members thereof, shall not be separately taxed so long as they shall be owned and used exclusively for such purposes."

Is there any more reason why ditches, etc., should not be separately taxed than that the stock of a corporation, which in a sense represents its property, should be? We do not think so, and in our opinion to so hold would in part be to destroy the principle or classification to secure just valuations provided for by article X, section 3 of the constitution which was attempted to be followed by the enactment of this section.

The question of exemption of stocks was urged in *Jersey City Gaslight Co. v. Jersey City*, 46 N. J. L. 194. In reply the court, at page 196, in part said:

"Though the provision of the act of 1866, that the stockholders shall not be so taxed for the stock, has been characterized as an exemption, it is not such in any sense. It is merely a declaration of the intention of the

legislature that the property of the corporation being taxable in the hands of the company shall not be again taxed in the hands of the stockholders. A provision so manifestly just will not be held to be repealed unless the intention to repeal it is clearly apparent.''

In *Appeal of Fox and Wife*, 112 Pa. St. 337, 34 Atl. 149, it is held that a tax upon the capital stock of a corporation is a tax upon its property and assets. At page 354 4 Atl. 154, the court says:

''It has been repeatedly decided in this state and is settled law, that a tax upon the capital stock of a corporation is a tax upon its property and assets.     *     *     *

We do not think the Act of 1885 is unconstitutional, because it does not impose the tax on mortgages upon corporations.''

*In Re St. Louis Loan and Investment Co.*, 194 Ill. 609, 62 N. E. 810, involved a statute which provided for the assessment of the shares of stock in such associations to the stockholders, and the real estate to the association; the assessor, in addition, attempted to assess the notes and mortgages held by the association. It was held that the act was not unconstitutional, and that it was not an exemption of property from taxation or assessment to not include the notes and mortgages. In commenting at page 616, the court said:

''We can see no reason why the legislature may not select this method of assessment, and provide, as it has, that outside of the real estate the assessment of the capital stock shall be deemed to be the assessment of the property of the association. This can not be said to be an exemption of property from taxation or assessment, but simply the selection of one of two methods subjecting the assets of such association to the public burden. Such being our view, we hold that the board of review was not authorized to assess the notes and mortgages

of appellant at the time and manner shown in this case, and such assessment is set aside and held for naught."

The case of *Chesbrough v. City and County,* 153 Calif. 559, 96 Pac. 288, discloses that the California Constitution then under consideration defined property as including corporate stock, yet for the purposes of taxation it was held that to the extent that the property of the corporation is situated, in that state, it is not to be taxed. To put it another way, it was held that the tax upon the property was corporate to the exent of its value, and is presumed to be the tax upon the stock.

In *Loan & Homestead Association v. Keith,* 153 Ill. 609, 39 N. E. 1072, 28 L. R. A. 65, in commenting upon this subject, at page 620, (39 N. E. 1075, 28 L. R. A. 65), the court says:

"While it may be conceded that the interest of a corporation in the corporate property, and the interest of the stockholder in the corporation, are separate interests, yet in reality they both represent one thing,—the money invested in the corporation by those who organized and created it. It would therefore be manifestly unjust to impose a tax on the corporation itself, and at the same time impose a tax on the shares of stock. Such a course would, in effect, require money invested in a corporation to pay double taxation. * * * In view of these facts, the legislature, under the power conferred by the constitution to regulate the manner of ascertaining the fair valuation of property subject to taxation and the mode to be adopted in the assessment, has provided by general law, that the whole assessment shall be made against the corporation. In doing this the legislature did not intend to exempt any property from taxation, and no property was exempt from taxation."

In *Stroh v. City of Detroit,* 131 Mich. 109, 117, 90 N. W. 1029, 1032, it is said:

"We do not feel called upon to ignore the plain

meaning of our Constitution by carrying the principles that the corporation and its shareholders are different persons, and the corporate property and the shares different property, so far as to say that the taxing of both is not double taxation in the common acceptation of the term or in the sense of the Constitution.''

In *Georgia Railroad and Banking Co. v. Wright*, 125 Ga. 589, at page 600, 54 S. E. 52, 57, the court says:

''A share of stock in a corporation has no inherent or intrinsic value. The General Assembly may declare that for the purposes of taxation it shall have that value which the owner may derive from it in the markets of the world. The General Assembly can not make it a subject of taxation at an arbitrary value; but if it is a thing which can be bought and sold upon the market, it is within the authority of the law making power to declare that for the purposes of taxation it shall be treated in the hands of the owner as of the value which it would command in the market. When that which gives it value has been taxed, the General Assembly is not required, under the constitution, to tax it again through the medium of the shareholder.''

Other cases in principle, which sustain our conclusion in this respect are.—*Commonwealth v. American Car Co.*, 203 Pa. St. 302, 52 Atl. 326; *Germania Trust Co. v. San Francisco*, 128 Calif. 589, 61 Pac. 178; *Chassaniol v. Board of Assessors*, 120 La. 777, 45 So. 604; *State v. St. L., K. C. & N. Ry. Co.*, 77 Mo. 202.

It follows that the combining of the share of the capital stock of a corporation and its corporate property for the purposes of taxation whereby all are taxed as a unit, can in no rational or logical way be construed into meaning an exemption of any property from taxation.

The judgment is affirmed.

*Affirmed.*

Decision *en banc.*